# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **LUIS A. TORRES, JR.**, <br><br> *Plaintiff,* <br><br> v. <br><br> **REALPAGE, INC.**, *d/b/a LeasingDesk Screening,* and **GENUINE DATA SERVICES, LLC**, <br><br> *Defendants.* | Case No.: 6:22-cv-1508 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Luis Torres, Jr.** ("**Mr. Torres**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **RealPage, Inc., d/b/a LeasingDesk Screening** ("**LeasingDesk**") and **Genuine Data Services, LLC** ("**GDS**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Torres against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION

2. Subject matter jurisdiction arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendants are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Florida Statutes § 48.193.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this cause of action occurred in Florida's Middle District.

## PARTIES

5. **Mr. Torres** is a natural person residing in Orlando, Orange County, Florida.

6. **LeasingDesk** is a Delaware corporation with a primary business address of 2201 Lakeside Blvd., Richardson, TX 75082.

7. LeasingDesk is registered to conduct business in the state of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

8. **GDS** is a Delaware limited liability company that may be served at its Delaware Registered Agent, Legalinc Corporate Services Inc., 651 N. Broad St. Suite 201, Middletown, DE 19709.

9. The Defendants are *Consumer Reporting Agencies* ("**CRAs**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, they regularly engage, in whole or in part, in the practice of assembling and evaluating consumer credit information for the

purpose of furnishing consumer reports to third parties and uses means of interstate commerce, including the postal mail and internet, for the purpose of preparing and furnishing these consumer reports.

## FACTUAL ALLEGATIONS

10. On or around August 16, 2022, Mr. Torres applied to rent an apartment at Springs at Tapestry Apartments ("**Springs at Tapestry**"), an apartment complex located in Kissimmee, FL.

11. In connection with Mr. Torres' application, Springs at Tapestry requested a consumer report concerning Mr. Torres from LeasingDesk.

12. Alternatively, Springs at Tapestry provided its tenant screening requirements to LeasingDesk and asked it to handle the evaluation of Mr. Torres' application as its agent and/or contractor.

13. When preparing its report on Mr. Torres, LeasingDesk requested and obtained supplemental data from GDS concerning any potential criminal records relating to Mr. Torres.

14. GDS, in response to LeasingDesk's inquiry, obtained information concerning criminal court records pertaining to "Luis Torres," and then furnished such records to LeasingDesk as a report concerning Mr. Torres' alleged criminal history.

15. Court records – especially those alleging criminal wrongdoing-- reflect heavily on an individual's character and general reputation.

16. GDS furnished the data to LeasingDesk for use in a report which would be used to evaluate Mr. Torres' application to lease an apartment.

17. As such, the data provided by GDS to LeasingDesk meets the definition of a "consumer report" under 15 U.S.C. § 1681a(d).

18. The report provided by GDS to LeasingDesk indicated that Mr. Torres was convicted of felonious battery on May 24, 2013, in Escambia County, FL, Case No. 2013 CF 000296. **See Plaintiff's Exhibit A.**

19. This is false. Mr. Torres has never set foot in Escambia County, FL and has never been convicted of any crime, nor arrested and charged with any crime.

20. Escambia County, FL Case # 2013 CF 000296 concerns an unrelated individual known as Luis Angel Torres born May 14, 1993. **See Plaintiff's Exhibit B.**

21. On information and belief, GDS also reported to LeasingDesk that Plaintiff Torres was previously adjudicated guilty of the following misdemeanors: disorderly intoxication, Case No. 2016 MM 006978, marijuana possession, Case No. 2016 MM 007440, trespassing, Case No. 2013 MM 2805, and criminal mischief, Case No. 2013 MM 003439. **See Plaintiff's Exhibit C.**

22. Each of these misdemeanors were adjudicated in Escambia County, Florida.

23. Each of these misdemeanors also concerned a Mr. Luis Angel Torres born May 14, 1993.

24. Plaintiff Luis Angel Torres, Jr. was born December 8, 1993.

25. Plaintiff Luis Angel Torres, Jr. uses the generational designation "Junior" in his name – a designation not present in any of the cases from Escambia County.

26. A simple review of the date of birth and address provided by Mr. Torres on his lease application would have verified that the Luis A. Torres from Escambia County, FL is not the same individual as Luis Angel Torres, Jr. from Orlando, Florida, nearly 450 miles away.

27. Despite this, GDS falsely and erroneously attributed the felonious battery adjudication and misdemeanor adjudications to Plaintiff in its report to LeasingDesk, without having any reasonable basis to believe the records concerned Plaintiff.

28. LeasingDesk, in connection with the report it assembled to evaluate Mr. Torres' rental application, also obtained a consumer report regarding Mr. Torres from Equifax Information Services, LLC ("Equifax"), one of the "Big Three" nationwide CRAs.

29. The consumer report provided by Equifax to LeasingDesk verified Mr. Torres' date of birth, which LeasingDesk already had from his rental application, was accurate, and it also contained Mr. Torres' detailed address history. **See Plaintiff's Exhibit D.**

30. Equifax's report regarding Plaintiff included ten different addresses – nine located in Orlando, Florida and one in Brooklyn, New York.

31. These ten addresses date back to 2013 and confirm that Plaintiff Luis Torres, Jr. has never resided in Escambia County, FL.

32. Equifax's report regarding Plaintiff also indicated that his birth date was December 8 – not May 14.

33. Despite clear and obvious indicators that the GDS data was erroneous and was not related to Plaintiff, LeasingDesk included the false data in its report for use by Springs at Tapestry.

34. As a result of the mis-appropriated felony battery conviction appearing on the credit report concerning Plaintiff, Springs at Tapestry rejected Mr. Torres' rental application.

### GDS' Unreasonable Procedures

35. When merging and assembling its data purportedly concerning Mr. Torres to furnish to LeasingDesk, GDS was required by the FCRA, 15 U.S.C. §

1681e(b), to use reasonable procedures to ensure maximum possible accuracy of the report produced.

36.     On information and belief, GDS utilizes software which automatically obtains criminal records for an individual based on the personal identifying information ("PII") provided to GDS by the entity ordering the report.

37.     On information and belief, GDS' systems match the PII provided with the PII from the public records for the criminal reports which GDS obtains, then provides all criminal records with matching PII to its customer.

38.     However, on information and belief, rather than match the date of birth of an applicant with the exact same date of birth found in a criminal record, GDS matches all criminal records for which the defendant's birth date has the same *year* as the applicant's date of birth.

39.     In November 2021, the Consumer Financial Protection Bureau ("CFPB") reiterated that "name only" matching techniques are inherently unreasonable and violate the FCRA's requirement reasonable procedures be utilized. "When background screening companies and their algorithms carelessly assign a false identity to applicants for jobs and housing, they are breaking the law," said CFPB Director Rohit Chopra. "No one should lose out on a job or an apartment because of sloppy and illegal matching." *CFPB Takes Action to Stop False*

*Identification by Background Screeners -- Mistaken Identity Matching Undermines Housing and Labor Market Recoveries*, Press Release, November 4, 2021.

40. Further, the CFPB explained such false matches disproportionately affect minority communities including Hispanics, due to less surname diversity than in White populations.

41. Despite the CFPB's strong admonishment not to utilize procedures exactly like the ones utilized by GDS, and that such procedures are likely to more adversely affect the Hispanic community – which Plaintiff is a member of – GDS continued to use what is essentially name-only matching techniques, even when such matches are not supported by all other data available about the subject of the report.

42. As it pertains to Plaintiff Torres, GDS matched all criminal records for *any* Luis Torres in Florida born between January 1, 1993, through December 31, 1993.

43. A search of public records indicates over 100 adults with the name "Luis Torres" and sufficient information existing in public records (e.g. voter registration, court records, etc.) to identify them individually live in Orlando alone; considerably more live in the state of Florida.

44. A public records search shows more than 90 people with sufficient information existing in public records to identify them individually are named Luis A. Torres and were born in 1993.

45. Matching an applicant with a common Hispanic first and last name, such as "Luis Torres," to criminal records based on year of birth, rather than specific date of birth and address history, is an inherently unreasonable procedure, as such matching will often yield a false positive match.

46. Indeed, for report subjects with a common Hispanic first and last name without a criminal history, the odds of a false positive are *greater* than the odds of an accurate report indicating no criminal history, if name-only matching is utilized.

## LeasingDesk's Unreasonable Procedures

47. As with GDS, LeasingDesk, when merging and assembling the data it obtained from Equifax with that from GDS, was required by the FCRA, 15 U.S.C. § 1681e(b), to use reasonable procedures to ensure maximum possible accuracy of the report produced.

48. LeasingDesk, despite obtaining information from Equifax which indicated that Plaintiff Torres had never lived in Escambia County, Florida, and was born in December 2013, not May 2013, and utilized the designation "Junior,"

incorporated the criminal records it obtained from GDS into its report on Plaintiff Torres for use by Springs at Tapestry.

49. Any reasonable procedure designed to ensure maximum possible accuracy would have disallowed the inclusion of this information, since it was obvious that the data belonged to another individual.

50. LeasingDesk's inclusion of information highly prejudicial against Mr. Torres – that he had been adjudicated guilty of felonious battery – entailed an unjustifiably high risk of harm to Mr. Torres.

51. LeasingDesk's conduct has caused Mr. Torres to suffer severe emotional distress, loss of credit, and severe damage to reputation, as well as the denial of the use and enjoyment of an apartment.

52. Mr. Torres also paid $150 in rental application fees on behalf of himself and his co-applicant, as well as a $200 holding fee and another $200 administrative fee, for a total of $550.

53. The Defendants are aware through prior litigation that their procedures are problematic and frequently result in false positives, but have yet to alter them. *See, e.g., Nigel E. Jackson v. Genuine Data Services, LLC*, Case No. 3:22-cv-00985-MGL (D.S.C. March 25, 2022); *Melissa Spence v. RealPage Inc.*, Case 6:22-cv-00529-CEM-DAB (M. D. Fla. March 14, 2022).

54. The Defendants' knowing and repeated conduct warrants an award of *punitive damages*.

55. Mr. Torres has hired this law firm to represent him in this matter and is obligated to pay its reasonable fees.

## COUNT I
## LEASINGDESK'S VIOLATIONS OF THE FCRA

56. Mr. Torres adopts and incorporates paragraphs 1 – 55 as if fully stated herein.

57. LeasingDesk violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as LeasingDesk's procedures resulted in the inclusion of demonstrably false information in a consumer report sold regarding Mr. Torres – that Mr. Torres had been adjudicated guilty of felony battery in Escambia County, Florida.

58. LeasingDesk has prior knowledge through consumer lawsuits and disputes that it frequently sells reports which falsely indicate that the consumer has been convicted of a crime.

59. LeasingDesk could easily make technological and procedural adjustments to prevent these errors, but instead elects to take what it believes is a more cost-effective route of not doing so.

60. LeasingDesk is – or should be – aware of the CFPB's declaration that name-only matching of criminal histories, especially involving Hispanic applicants, is not reasonable pursuant to the FCRA.

61. As such, LeasingDesk's actions were willful and intentional, or, alternately, performed with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

62. As a result of its conduct, LeasingDesk is liable to Mr. Torres, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Torres' actual damages and statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs.

63. Alternatively, LeasingDesk's actions were negligent, and Mr. Torres is entitled, pursuant to 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Torres respectfully requests this Honorable Court enter judgment against LeasingDesk for:

    a. The greater of statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1), or; Mr. Torres' actual damages for loss of credit opportunities and related economic and non-economic injuries;

    b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3);

    c.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## GDS' VIOLATIONS OF THE FCRA

64. Mr. Torres adopts and incorporates paragraphs 1 – 55 as if fully stated herein.

65. GDS violated 15 U.S.C. **§ 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as GDS' procedures resulted in the inclusion of demonstrably false information in a consumer report sold regarding Mr. Torres – that Mr. Torres had been adjudicated guilty of felony battery and four misdemeanors in Escambia County, Florida.

66. GDS has prior knowledge through consumer lawsuits and disputes that it frequently sells reports which falsely indicate that the consumer has been convicted of a crime.

67. GDS is – or should be – aware of the CFPB's declaration that name-only matching of criminal histories, especially involving Hispanic applicants, is not reasonable pursuant to the FCRA.

68. GDS could easily make technological and procedural adjustments to prevent these errors, but instead elects to take what it believes is a more cost-effective route of not doing so.

69. As such, GDS's actions were willful and intentional, or, alternately, performed with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

70. As a result of its conduct, GDS is liable to Mr. Torres, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Torres' actual damages and statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs.

71. Alternatively, GDS's actions were negligent, and Mr. Torres is entitled, pursuant to 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Torres respectfully requests this Honorable Court enter judgment against GDS for:

a. The greater of statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1), or; Mr. Torres' actual damages for loss of credit opportunities and related economic and non-economic injuries;

    b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3);

    c.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Torres hereby demands a trial by jury on all issues so triable.

Respectfully submitted August 24, 2022, by:

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No. 119168
Seraph Legal, P.A.
1614 N. 19th St.
Tampa, Florida 33605
Phone: 813-321-2348
Fax: (855) 500-0705
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*

**Exhibit List**

A.    Plaintiff's LeasingDesk Consumer Report, August 16, 2022, Excerpt
B.    Escambia County Public Records, Case # 2013 CF 000296
C.    Plaintiff's LeasingDesk Consumer Disclosure, Criminal Records Excerpt
D.    Plaintiff's LeasingDesk Consumer Disclosure, Credit Excerpt